FILED by _____ D.C.

JUN 20 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA – FT. LAUD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Misc. No.: 14mc 61417

IN THE MATTER OF            )
THE EXTRADITION             )
OF STEVEN APPLETON          )

COMPLAINT FOR PROVISIONAL ARREST
WITH A VIEW TOWARDS EXTRADITION
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I act for and on behalf of the Government of Ireland.

2. There is an extradition treaty in force between the United States and Ireland, the Treaty on Extradition Between the United States of America and Ireland, U.S.-Ir., July 13, 1983, T.I.A.S. No. 10813 ("the Treaty)", as supplemented and amended by the Instrument and Annex as contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed June 25, 2003, U.S.-Ir, July 14, 2005, S. TREATY DOC. NO. 109-14 (2006) ("the Instrument and Annex").

3. The Annex provides in Article 10 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and supporting documents;

4. In accordance with Article 10 of the treaty, the Government of Ireland has asked the United States for the provisional arrest of Steven APPLETON (a/k/a Stephen Appleton) ("APPLETON") with a view towards his extradition.

1

5.      According to the information provided by the requesting state, on February 10, 2014, a Judge of the Ardee District Court in Ireland issued thirty-three individual warrants for APPLETON's arrest, one for each of the following charges:

- Three counts of Rape, an offence contrary to Section 4 of the Criminal Law (Rape) (Amendment) Act 1990; and
- Thirty counts of Sexual Assault, an offence contrary to Section 2 of the Criminal Law (Rape) (Amendment) Act 1990, as amended by Section 37 of the Sex Offenders Act 2001.

6.      Two of the three counts of Rape, an offence contrary to Section 4 of the Criminal Law (Rape) (Amendment) Act 1990 go to the offenses allegedly committed against C.E. (born August 4, 1998), on various dates during the period from December 3, 2010, until March 10, 2011. The third count of Rape was allegedly committed against her sister, J.E. (born December 19, 2000) during the same time period.

7.      Sixteen of the thirty counts of Sexual Assault, an offence contrary to Section 2 of the Criminal Law (Rape) (Amendment) Act 1990, as amended by Section 37 of the Sex Offenders Act 2001, goes to the offenses allegedly committed against C.E., on various dates during the period from December 3, 2010, until March 10, 2011. The fourteen further counts of Sexual Assault were allegedly committed against her sister, J.E., on various dates during the same time period.

8.      The warrants were issued on the basis of the following facts related to his conduct against C.E. and J.E., which occurred from December 3, 2010, until March 10, 2011, in Ireland.

9.      In the summer of 2010, R.E. and her four children, including C.E. and J.E. moved in with APPLETON in his home in West Sussex, England, United Kingdom. The social services department in West Sussex soon expressed concerns related to the family's involvement

2

with APPLETON. As a result, APPLETON and R.E.'s family left the United Kingdom in November 2010 and traveled to Ireland. Once in Ireland, R.E.'s family and APPLETON stayed in a number of hotels before moving to a residence in Ardee, County Louth, Ireland in December 2010.

10. In April 2011, C.E. told Irish social service authorities that she was sexually assaulted by APPLETON for the first time while they were living together in the United Kingdom. She stated that he also raped and assaulted her at the Hilton Hotel in Dublin on December 6, 2010, and December 7, 2010. C.E. stated that while at the Hilton Hotel, APPLETON touched her vagina and inserted his finger into her vagina while masturbating himself. C.E. further stated that he then placed his penis in where his finger had been. C.E. also described a second incident of a similar nature that occurred at the Hilton Hotel on December 6, 2010, and December 7, 2010. C.E. stated that this incident started by APPLETON scratching her back before moving to her vagina.

11. C.E. further stated that while living in Ardee, APPLETON repeatedly engaged in sexual acts with her on a regular basis from December 3, 2010, until March 10, 2011. C.E. stated that these incidents typically started with APPLETON scratching her back before moving to her vagina. He then inserted his fingers into her vagina, and sometimes ejaculated. On some of these occasions, he put his penis inside her vagina. When he finished, he pulled up her pants, wiped his sperm off her, and left the room. After one such occasion, R.E. saw APPLETON coming out of C.E.'s room and asked him what he was doing. C.E. believes this was the last time APPLETON assaulted her.

12. C.E. also reported to Irish authorities that while visiting the United States in

3

January 2011, she and her sister, J.E., shared a room with APPLETON. APPLETON shared a bed with J.E. C.E. told Irish authorities that she believes she heard APPLETON having sex with J.E. J.E. later told C.E. that APPLETON had forced her to have sex. When their mother asked J.E. if APPLETON had sex with her, J.E. responded that he had.

13. J.E. made three statements to Irish authorities, in which she described several incidents of rape and sexual assault committed upon her by APPLETON during the period from December 2010 to March 2011. J.E. also gave Irish authorities several letters she had written and pictures she had drawn that describe the incidents of rape and sexual assault committed upon her by APPLETON. In one letter, J.E. stated that APPLETON had made her have sex with him, but that it wasn't her fault. Irish authorities accordingly charged APPLETON for his alleged offenses of rape and sexual assault against J.E. that occurred between December 3, 2010, and March 10, 2011, at the home in Ardee, County Louth.

14. From December 2010 to March 2011, the J.E. and C.E. were known to Irish social services. On March 10, 2011, R.E. was admitted to a hospital with stomach pains. Social workers were concerned her children would be left under the sole care of APPLETON, and thus approached R.E. to express their concerns and advise her to voluntarily place her children in foster care. R.E. responded by calling APPLETON to instruct him to flee with her children. R.E. then changed her mind and filed a report with Irish police stating that APPLETON had abducted her four children. On March 13, 2011, APPLETON and the children were found in Northern Ireland. At the time, APPLETON was in the company of an individual named H.P. APPLETON and H.P. were arrested on suspicion of kidnapping and false imprisonment. The J.E. and C.E. were then transferred into the care of social services in the Republic of Ireland.

4

When APPLETON was interviewed, he stated that he took the children pursuant to the request of their mother. Since C.E. and J.E. had not yet disclosed the sexual abuse, Northern Irish authorities released H.P. and APPLETON.

15. In April 2011, when C.E. first disclosed to social workers that she was the victim of a number of sexual assaults committed by APPLETON, she was interviewed by Irish police. C.E. told Irish authorities that she believes her mother was aware of the abuse because R.E. constantly asked C.E. if APPLETON was "grooming" her. C.E. also stated to Irish police that APPLETON spoke to her about leaving without R.E. and traveling to a country without an extradition agreement with Ireland. He has allegedly researched extradition on the Internet. Irish authorities believe that he used his financial means to pay for R.E. to travel to County Cork, Ireland, and England several times, so he was left alone with some or all of R.E.'s children.

16. C.E. was examined by a physician who stated that "[C.E.'s] medical examination revealed clinical features of penetrative sexual abuse which correlate with the disclosures she made since admission to care."

17. APPLETON was identified by name by C.E. and J.E. In addition, U.S. law enforcement have advised that APPLETON entered the United States with an individual named H.P. on June 16, 2014.

18. The offenses with which APPLETON is charged are provided for in Article 2 of the Instrument and Annex cited above.

19. APPLETON may be found within the jurisdiction of this court at Extended Stay America in Plantation, Florida, the address of which is believed to be 7755 SW 6th Street, Fort Lauderdale, Florida 33324.

20. The requesting state has represented that it will submit a formal request for extradition, supported by the documents specified in the Instrument and Annex, within the time required under the Instrument and Annex.

21. The person named above would be likely to flee if he learned of the existence of a warrant for his or her arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with the Instrument and Annex and Title 18, United States Code, Section 3184, so that the fugitive may be arrested and brought before this court, "to the end that the evidence of criminality may be heard and considered," and that this complaint and the warrant be placed under the seal of the court until such time as the warrant is executed.

Respectfully Submitted,

Randall D. Katz
Assistant United States Attorney
Court I.D. No. A5500942
500 E. Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
(954) 660-5720/direct
Randy.Katz@usdoj.gov

Sworn to before me and subscribed in my presence this ___ day of June, 2014, at Fort Lauderdale, Florida.

Honorable Barry S. Seltzer
United States Magistrate Judge